**75661. JOHNSON DRILLING COMPANY, INC. v. BANK OF THE SOUTH, N.A.**
(367 SE2d 559)

Pope, Judge.

Summary judgment was granted to defendant-appellee Bank South based upon the following undisputed facts. In 1980 John and Hubert Johnson, owners of appellant Johnson Drilling Company, set up two mining companies, J. J. Mining Company and J & P Coal Company (hereinafter "the mining companies"). In order to obtain a reclamation bond as required by the State of Tennessee, the Johnsons requested Bank South to issue the mining companies a letter of credit in the amount of $40,000. The letter of credit was issued and payment of all sums advanced against it was guaranteed by Johnson Drilling Company, as a long-time customer of the bank. The agreement for the letter of credit also provided that Bank South had the right to set-off any sums owed the bank against any funds of Johnson Drilling Company held by the bank. When the letter of credit was drawn upon by the bonding company to which it was given, Bank South paid $40,000 to that company and, acting pursuant to its rights under the guaranty, set-off that amount against the general account of Johnson Drilling Company.

The Johnsons objected to this set-off and met with Bank South officials, who agreed to return the funds to the Johnson Drilling Company account and to accept in lieu thereof two unsecured promissory notes from the mining companies totaling $40,000. According to the deposition testimony of its officers who participated in this transaction, Bank South in accepting these notes viewed Johnson Drilling's pre-existing obligation as guarantor under the agreement for the letter of credit to be continuing. Paragraph 11 of that agreement provided in pertinent part: "As security for the payment and performance of any and all of our [Johnson Drillings'] obligations and liabilities to you [Bank South], direct and indirect, absolute or contingent, due or to become due, now existing or hereafter arising, each of us hereby pledges to you and/or gives you a general lien upon and/or right of set-off of, all right, title and interest of each of us in and to the balance of every deposit account, now or at any time hereafter existing, of each of us with you, or any other claims of any of us against you, . . . and in any other property, rights and interests of each of the undersigned, or any evidence thereof, which have been or at any time shall be delivered to or otherwise come into your possession, custody or control . . . ; and you shall be deemed to have possession, custody or control of any such property actually in transit to or set apart for you or any of your agents, correspondents or others acting in your behalf."

After no payments were made on the promissory notes by the

mining companies, Bank South again set-off the $40,000 against the Johnson Drilling Company account, plus accrued interest. Johnson Drilling sued for the return of these funds, contending that it was not contemplated that it would have any continued liability as guarantor on the second transaction. Bank South moved for summary judgment based upon the premise that the set-off was to compensate the bank for a debt that Johnson Drilling Company had guaranteed, for which the subsequent promissory notes executed by the mining companies did not act as a novation. Appeal is from the ruling of the trial court that the set-off was permitted as a matter of law. *Held*:

The issue presented in this appeal, to wit, whether the substitution of the mining companies' notes for the original account indebtedness resulted in the discharge of the guarantor Johnson Drilling Company from liability under the guaranty agreement, has previously been decided adversely to appellant. In *Columbia Nitrogen Corp. v. Mason*, 171 Ga. App. 685, 686 (320 SE2d 838) (1984), it was held "that the mere execution by an account debtor of a promissory note evidencing the indebtedness due on the account does not constitute a novation of the original obligation and does not otherwise operate to discharge a guarantor of the account indebtedness from liability. [Cit.]" See generally *Haynie v. First Nat. Bank*, 117 Ga. App. 766 (162 SE2d 27) (1968). Bank South would not have issued or renewed the letter of credit on behalf of the mining companies without Johnson Drilling as a guarantor. As explained by one of the participating bank officers, "the only reason for the bank to be doing business with J & P and J & J Coal was because of the relationship with Johnson Drilling. . . . Their credit was Johnson Drilling's credit, because they were to us a subsidiary function of Johnson Drilling."

"If the [guaranty agreement] was intended to restrict liability to particular transactions, words to that effect should have been chosen. As written, it did not accomplish this. [Cit.]" *White v. Chapman*, 149 Ga. App. 409, 412 (254 SE2d 434) (1979). Thus, there was no need to require any other collateral as security for the promissory notes subsequently executed by the mining companies, because Johnson Drilling's status as guarantor of the letter of credit was not affected by this transaction. See *Crutchfield v. Trust Co. Bank*, 157 Ga. App. 557 (1a) (278 SE2d 138) (1981). Any negligent act of the bank which caused the bond forfeiture necessitating drawing against the letter of credit might give rise to a cause of action against Bank South in tort, but it would not relieve Johnson Drilling of liability as guarantor.

The language of the guaranty agreement covering "any and all" present and future obligations and liabilities was plain and unambiguous, and thus not subject to construction by the trial court. See *Remler v. Coastal Bank*, 179 Ga. App. 25, 27 (345 SE2d 79) (1986). There was no evidence presented that either the debt or the obliga-

tion under the guaranty was extinguished and, except for the first off-set which was replaced in Johnson Drilling Company's account, Bank South has never received any compensation or consideration for paying $40,000 on the letter of credit. The rule is that a bank may apply the amount of the account of one of its depositors to a matured debt owed to the bank regardless of whether the indebtedness of the depositor be that of a principal or upon an obligation on which the depositor is only secondarily liable. See *Nat. City Bank v. Busbin*, 175 Ga. App. 103 (3) (332 SE2d 678) (1985), and cits. It follows that summary judgment was properly granted in favor of Bank South.

*Judgment affirmed. Birdsong, C. J., McMurray, P. J., Banke, P. J., Benham and Beasley, JJ., concur. Carley, J., concurs in judgment only. Deen, P. J., dissents. Sognier, J., disqualified.*

DEEN, Presiding Judge, dissenting.

I must respectfully dissent. On a motion for summary judgment, the burden is on the movant to establish lack of a genuine issue of fact, and the party opposing the motion is given the benefit of all reasonable doubts that a genuine issue of fact exists, with the benefit of all favorable inferences that may be drawn from the evidence. *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962). The evidence must be construed most favorably to the party opposing the motion. *Hanover Ins. Co. v. Nelson Conveyor &c. Co.*, 159 Ga. App. 13 (282 SE2d 670) (1981); *Vizzini v. Blonder*, 165 Ga. App. 840 (303 SE2d 38) (1983).

The evidence showed that Hubert Johnson, president of Johnson Drilling Company (a corporation), testified by deposition that the letter of credit which was issued in favor of the bonding company replaced a $35,000 cash bond which had been previously posted with the State of Tennessee. The letter of credit which was given for the activities of the two mining companies was guaranteed by Johnson Drilling Company, but it was not personally guaranteed. The letter of credit was to be renewed annually. Johnson sent a written request that it be renewed, but the bank failed to renew it. The bank indicated to Johnson and his attorney that it had been renewed, but Johnson subsequently learned from the State of Tennessee that it had not been renewed. When the bank was notified of the problem, Johnson Drilling Company was assured that the bank was taking care of it. When the letter was not renewed in a timely fashion, the mining companies' leases were cancelled and they were told to vacate the premises. The bonding company then drew on the $40,000 letter of credit. Bank South withdrew this amount from the Johnson Drilling Company account. Johnson protested this action because it was a separate corporation from the mining companies. The bank then agreed to a meeting between Johnson, his attorneys, and bank officials. At

the meeting, it was agreed that the bank would replace the money in the Johnson Drilling Company account, and two non-guaranteed notes would be executed by the mining companies in the amounts of $15,000 and $25,000.

Johnson further testified that at the meeting the bank admitted that it erred in not properly and timely renewing the letter of credit, that it regretted its error, and that it would therefore take two unsecured notes from the mining companies. The notes show on their faces that they are unsecured, and the bank officer who drafted them admits that the handwritten notation "unsecured" on them is in his handwriting. In return for executing the notes, the bank asked for the companies' cooperation in recovering any money from the State of Tennessee and that the mining companies would return any money that they recovered. Three days later, the bank again withdrew $40,000 from the Johnson Drilling Company account.

The affidavit of one of Johnson's attorneys is included in the record. He was present at the meeting with the bank and verifies Johnson's testimony as to the amount of the notes, that it was agreed that the notes were to be unsecured obligations of the two mining companies, and that there was no request that the plaintiff execute any instrument to pay the notes in the event of default.

Applying the rules to be used by the trial court in ruling upon a motion for summary judgment as they are set forth above, I find that there was a genuine issue of fact requiring jury resolution. A jury could find that appellant's position as a guarantor was discharged when the bank agreed to return the $40,000 to Johnson Drilling Company's account after paying the letter of credit in return for the corporation's continued business and forebearance in taking legal action against it for its admitted error in failing to renew the letter of credit after receiving a written request that it be renewed. Further evidence that a novation occurred is the execution of the two unsecured notes, which were solely the obligation of the mining companies.

*Columbia Nitrogen Corp. v. Mason*, 171 Ga. App. 685 (320 SE2d 838) (1984) is distinguishable in that the Masons executed a "continuing and unconditional guarantee" in favor of appellant, and the court found that execution of the unsecured notes did not constitute a delay in payment. In the instant case, a jury could find that the previous guarantee was extinguished and a new agreement was reached, which was based in part on the admitted wrongdoing of the bank.

DECIDED FEBRUARY 19, 1988 —
REHEARING DENIED MARCH 3, 1988 — 

*F. Carter Tate*, for appellant.

*Thomas H. Christopher, Constance C. Russell,* for appellee.